UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELECTRICAL WORKERS PENSION TRUST
FUND OF LOCAL # 58, IBEW; ELECTRICAL WORKERS'
JOINT BOARD OF TRUSTEES VACATION FUND;
ELECTRICAL WORKERS' INSURANCE FUND;
SUPPLEMENTAL UNEMPLOYMENT BENEFIT FUND OF
THE ELECTRICAL INDUSTRY, DETROIT, MICHIGAN;
IBEW LOCAL NO. 58 ANNUITY FUND; JOINT
APPRENTICESHIP TRAINING TRUST FUND; NECA-
IBEW LOCAL LABOR-MANAGEMENT COOPERATION
FUND; and NATIONAL ELECTRICAL BENEFIT FUND,

                 Plaintiffs,

                                                                      Case No. 08-cv-13057
v.                                                                       Hon. Anna Diggs Taylor

BRENNAN ELECTRICAL CONTRACTORS, INC.,

                 Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**

I.
*Introduction*

This matter having come before the Court on cross motions for summary judgment; for the reasons explained below, Plaintiffs' motion is GRANTED IN PART and Defendant's motion is DENIED.

**Background**

In 1968, Michael Brennan, who is a Master Electrician, became a member of the International Brotherhood of Electrical Workers and on April 26, 1989, he incorporated his own electrical contracting business, which he named Brennan Electrical Contractors Inc. (hereinafter "Brennan Electrical"). Mr. Brennan ran his small business out of his home and has always been the

President/General Manager of the company. Plaintiffs, Electrical Workers Pension Trust Fund of Local Union #58, IBEW *et al* (hereinafter "the Funds") are trust funds established and administered pursuant to, Section 302 of the Labor-Management Relations Act, of 1947, as amended ("LMRA"), 29 U.S.C. §186, and the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §1001, *et. seq*.

On September 25, 1989, Mr. Brennan signed a Letter of Assent on behalf of Brennan Electrical authorizing the Southeastern Michigan Chapter, NECA, Inc. (hereinafter "NECA") to be Brennan Electrical's collective bargaining representative for all matters contained in or pertaining to the current and any subsequent approved Inside Labor Agreement between NECA and Local Union # 58, IBEW. In pertinent part the Letter of Assent provided:

> The Employer agrees that if a majority of its employees authorizes the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the exclusive collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites. . . . . It shall remain in effect until terminated by the undersigned employer giving written notice to the Southeastern Michigan Chapter, Inc. and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement.

Mr. Brennan does not dispute that he appeared on Brennan Electrical's payroll and that he performed covered electrical work during the lifetime of the Collective Bargaining Agreement. Also, he has acknowledged that as the owner of Brennan electrical, the union required him to pay double the amount in union dues than would have a normal wireman. He claims that the union informed that this was because it could not track his hours.

Mr. Brennan claims that in 1989, Tommy Landa, a for business representative for Local Union # 58, IBEW, informed him that he was not covered under any contract with the union, nor was he

2

eligible to receive any benefits. Since Mr. Brennan was not entitled to any benefits under the agreement, he was required to pay for his own health insurance with a personal check. This fact Brennan Electrical maintains is consistent with Landa's statement. Brennan Electrical, however, does not assert that any representative for the Funds ever told Mr. Brennan or any other employee of Brennan Electrical that Mr. Brennan was not covered by the pension agreements.

On January 1, 1995, Mr. Brennan on behalf of Brennan Electrical signed a Pension Fund Participation Agreement and an Annuity Fund Participation Agreement with the Funds. In pertinent part, the Pension Fund Participation Agreement provided:

> The Employer shall make contributions to the Pension Fund on behalf of each and every one of its employees who previously had accrued at least one year of service under the Pension Plan based on work performed as part of a bargaining unit represented by the Union.
>
> It is understood and agreed that contributions will not and may not be made in behalf of any person who is a sole proprietor or a partner in an employer partnership.

With respect to termination, the agreement contained the following:

> The Employer may revoke its election and terminate this Pension Fund Participation Agreement at any time by giving written notice of such revocation to the Pension Fund at the Fund Office, but in no event shall such revocation be given retroactive effect or result in a refund of contributions to the Employer.[1]

On July 21, 1998, Jeff Radjewski the Business Manager and Financial Secretary for Local Union # 58, IBEW sent a letter to Mr. Tom Mittlebrun III – who was Administrator for the Electrical Workers Joint Boards of Trustees – advising him to remove Brennan Electrical from its active files with an effective date of May 30, 1998. According Mr. Craig Young, the Assistant Administrator for

---

[1]The Annuity Fund Participation Agreement contained virtually the same language as the Pension Fund Participation Agreement.

3

the Electrical Workers Joint Board of Trustees, once a contractor becomes inactive, it is no longer obligated to submit contribution reports to the Fund office. The Funds construe inactive status to mean that a contractor is still covered under the labor agreement but does not have to comply with labor or fund participation agreements until it once again becomes active.

On June 24, 2003, Mr. Brennan as President of Brennan Electrical, signed another Letter of Assent authorizing NECA "as its collective bargaining representative for all matters contained in or pertaining to the current and any subsequent approved Residential Labor Agreement between the NECA and Local Union # 58, IBEW." This Letter of Assent also provided that the authorization shall"remain in effect until terminated by Brennan Electrical upon giving written notice to the NECA and to Local Union # 58, IBEW at least 150 days prior to the then current anniversary date of the applicable approved labor agreement."

On January 1, 2004, Local Union # 58, IBEW and NECA, entered into a Residential Wiring Agreement and this agreement was to remain in effect until December 31, 2006.[2] The agreement also had a provision which stated that: "[it] shall continue in effect from year to year thereafter, from January 1st through December 31st of each year, unless terminated in the way later provided herein." Additionally, with respect to employees, the agreement defined employees as "the workperson or workpersons covered by the terms and conditions of this Agreement and who perform work exclusively under this Agreement." Regarding termination, the agreement provided:

> **Section 1.02 A.** Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written

---

[2]NECA by virtue of the Letter of Assent had the authority to bind Brennan Electrical to this agreement.

notification at least ninety (90) days prior to the expiration date of the Agreement or any anniversary date occurring thereafter.

**Section 1.02 B.** Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

**Section 1.02 C.** The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

**Section 1.02 D.** In the event that either party, or an Employer withdrawing representation from the Chapter or not represented by the Chapter, has given a timely notice of proposed changes and an agreement has not been reached by the expiration date or by any subsequent anniversary date to renew, modify, or extend this Agreement, or to submit to the unresolved issues to the Council on Industrial Relations for the Electrical Contracting Industry (CIR), either party or such an Employer, may serve the other a ten (10) day written notice terminating this Agreement. The terms and conditions of this Agreement shall remain in full force and effect until the expiration of the ten (10) day period.

**Section 1.02 E.** By mutual agreement only, the Chapter, or an Employer withdrawing representation from the Chapter or not represented by the Chapter, may jointly, with the Union, submit the unresolved issues to the Council on Industrial Relations for adjudication. Such unresolved issues shall be submitted no later than the next regular meeting of the Council following the expiration date of this Agreement or any subsequent anniversary date. The Council's decision shall be final and binding.

**Section 1.02 F.** When a case has been submitted to the Council, it shall be the responsibility of the Negotiating Committee to continue to meet weekly in an effort to reach a settlement on the local level prior to the meeting of the Council.

**Section 1.02 G**. Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

On January 22, 2007, Mr. Brennan sent a letter to Joe Abdoo, Local Union # 58, IBEW's Business Manager/Financial Secretary informing him of his intent to end Brennan Electrical's

association with the union. On that same day, Mr. Brennan sent a similar letter to Daniel T. Tripp the Secretary-Treasurer of the NECA, revoking power of attorney. Mr. Brennan, however, did not send this letter to any representative for the Funds. Mr. Brennan states that noone from the NECA, the union or from the Funds contacted him to notify him that these letters did not sufficiently communicate his intent to end Brennan Electrical's association and relationship with Local Union # 58, IBEW and the Funds.

On January 23, 2008, Mr. Mittelbrun, sent a letter to Brennan Electrical in which he informed the company of the alleged delinquent contributions, requested payment, and included a copy of an audit report supporting these findings. Brennan Electrical did not respond to this letter and thus, Mr. Mittelbrun sent a similar letter on March 5, 2008. The Funds assert that when the Residential Agreement was in effect during 2005-2007, Brennan Electrical employed four (4) individuals, who were covered under the participation agreements. These individuals were Mr. Brennan, Marija Dedvukaj a.k.a. Mary Brennan (Mr. Brennan's wife), Ryan Husch (Mr. Brennan's nephew) and Samuel Stone. The Funds further allege that when they audited Brennan Electrical, they discovered that it had failed to make the required contributions on the behalf of these employees.

On July 16, 2008, the Funds filed the instant case and on October 31, 2008, the Funds' auditors completed a revised audit for fiscal years of 2005, 2006 and 2007, in which they ascertained that the amounts Brennan Electrical allegedly owed in unpaid contributions to be: $39,132.61 for 2005; $44,446.24 for 2006; and $58,742.51 for 2007. The grand total of unpaid contributions over the three years is $142,321.36, which the Funds are now requesting.

Brennan Electrical asserts various reasons why it should not be held liable for the alleged delinquent contributions. First, it relies upon the representations that Mr. Landa allegedly made to Mr.

Brennan informing him that he was not covered by any of the agreements and not entitled to any benefits. Second, Brennan Electrical argues that no contributions are owed on behalf of Mr. Brennan because the various trust fund agreements expressly exclude him as the sole owner and operator of Brennan Electrical. In support of this argument, Brennan Electrical cites to the following language contained in the pension agreements:

> No person who is a (a) proprietor or (b) a partner in an Employer partnership shall be an "Employee". . . *See Supplemental Unemployment Benefit Fund of the Electrical Industry*
>
> Eligibility for Benefits: In order to receive benefits from the Fund, a Participant must. . . be unemployed by reason of a layoff. . . provided that the Participant's most recent layoff must be from an Employer which is not owned or substantially controlled by the Participant, any person to whom the Participant is closely related by blood or marriage or any combination thereof. . . *Id.*
>
> No Employer shall have any right, title or interest in or to the contributions made by that or any other Employer to the Fund and no Employer shall receive, directly or indirectly, any benefits from the Fund. . . *Id.*
>
> No Employer shall have any right, title, or interest in the contribution made by it to the Fund and no part of the Fund shall revert to any such Employer except in the case of an error in the remission of contributions and then only as may be permitted by law and the Trustees. *See Electrical Workers' — Joint Board of Trustees Vacation Fund Agreement And Declaration of Trust.*
>
> The term "employee" shall mean. . . any person engaged by one or more employers to perform work as part of the bargaining unit represented by the Union. . . *Agreement and Declaration of Trust of Electrical Workers' Insurance Fund.*
>
> No Employer shall have any right, title, or interest in the contribution made by it to the Fund and no part of the Fund shall revert to any such Employer except in the case of an error in the remission of contributions and then only as may be permitted by law and the Trustees. *See Southeastern Michigan Electrical Industry Labor*

> *Management Cooperation Trust Fund Agreement And Declaration of Trust.*
>
> No part of the assets of the Fund shall inure to the benefit of, or be distributable to any Employer. . . *See Apprentice and Journeyman Training Trust Fund of the Electrical Industry, Third Amendment*.
>
> No person who is a proprietor or a partner in an employer partnership shall be an 'employee'. . . *IBEW Local No. 58 Annuity Fund Agreement and Declaration of Trust, Second Amendment*.

Brennan Electrical's arguments based on the above language are as follows: (1) as an employer, the express language of the trust agreements prohibited Mr. Brennan from participating; (2) Mr. Brennan is excluded because an employee is defined as an individual performing work as part of bargaining unit represented by the union; (3) the agreements specifically exclude an individual who owns or substantially controls the employer. Brennan Electrical alternatively argues that given the above language contained in the agreements and Mr. Landa's statements, the Funds' should be estopped from collecting any contributions on behalf of Mr. Brennan. The Funds also should be estopped from collecting any such contributions because they failed to notify the company that it owed any contributions for Mr. Brennan for well over a twenty year period. The Funds claims here should be dismissed because they failed to make any reference to the Residential Agreement in their initial Complaint or Amended Complaint. Finally, Brennan Electrical argues that in the event that this court does find that contribution are owed on behalf Mr. Brennan, no contributions should be owed after January 22, 2007, which is the date Brennan Electrical ended its relationship with NECA, Local Union # 58, IBEW and the Funds.

On July 28, 2009, the parties filed cross motions for summary judgment and on October 26, 2009, this court heard oral arguments.

II.

*Legal Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

III.

*Analysis*

*Mr. Brennan's Employee Status Under the Participation Agreements*

The parties do not argue that the participation agreements are not controlled by the ERISA. Brennan Electrical, however, argues that Mr. Brennan should not be treated as an employee under these agreements. Brennan Electrical cites the language in the participation agreements which specifically exclude an owner of a sole proprietorship or a partnership from coverage. Additionally, it asserts that Mr. Brennan cannot be covered by the participation agreements because he is not considered an employee under the applicable labor agreements or the under National Labor Relations Act (NLRA). Moreover, Brennan Electrical contends that no contributions are owed on the behalf Mr. Brennan and his spouse, since sole owners of corporations cannot qualify as participants in an ERISA sheltered employee benefit plan. In support of this later argument, Brennan Electrical relies on two Sixth Circuit cases *Agrawal v. Paul Revere Life Ins. Co.,* 205 F.3d 297, 302 (6th Cir. 2000) and *Fugarino v. Hartford Life and Accident Ins. Co.,* 969 F.2d 178, 186 (6th Cir. 1992). For the ensuing

reasons, this court agrees with the Funds that Mr. Brennan should be considered an employee under the agreements.

With respect to whether the owner of a sole proprietor or a partnership may be considered an employee under the ERISA, the statute simply states that the "term 'employee' means any individual employed by an employer. 29 U.S.C.A. § 1002 (6). The statute gives greater detail in defining a participant stating:

> The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit. 29 U.S.C.A. § 1002 (7).

In *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon* 541 U.S. 1, 124 S.Ct. 1330 U.S., (2004) the United States Supreme court addressed the question of whether a working owner of a professional corporation may qualify as a participant in a pension plan covered by the ERISA. The Court confronted this issue because there was division amongst the federal appeals courts and the ERISA's language regarding this issue was uninformative. *Id.* at 11-12. In holding that a working owner may also qualify as a participant and/or employee under the ERISA, the Court stated:

> Under ERISA, a working owner may have dual status, i.e., he can be an employee entitled to participate in a plan and, at the same time, the employer (or owner or member of the employer) who established the plan. Both Title IV and the IRC describe the "employer" of a sole proprietor or partner. See 29 U.S.C. § 1301(b)(1) ("An individual who owns the entire interest in an unincorporated trade or business is treated as his own employer, and a partnership is treated as the employer of each partner who is an employee within the meaning of section 401(c)(1) of [the IRC]."); 26 U.S.C. § 401(c)(4) ("An individual who owns the entire interest in an unincorporated trade or business shall be treated as his own employer. A partnership shall be treated as the employer of each partner who is an employee within the meaning of [§

10

>
> 401(c)(1) ]."). These descriptions expressly anticipate that a working owner can wear two hats, as an employer and employee. *Hendon,* 541 U.S. at 16.

Based on the Supreme Court's holding in *Yates*, it is clear that Mr. Brennan may be considered both the owner of Brennan Electrical and an employee under the ERISA. Brennan Electrical's arguments premised on the Sixth Circuit's holdings in *Agrawal* and *Fugarino,* are unpersuasive, as those opinions are abrogated on points where they contradict the Supreme Court's holding in *Yates*.

Brennan Electrical also cites to language from the various pension agreements, which state that "[n]o person who is a proprietor or a partner in an employer partnership shall be an employee" as further support for the argument that Mr. Brennan is not covered under the participation agreements. This argument is unpersuasive, since Brennan Electrical is a corporation and is not sole proprietorship or a partnership. Therefore, based on the plain language contained in these provisions it is clear that these provisions do not exclude Mr. Brennan.

Finally, Brennan Electrical contends that language in the trust agreements, which defines an "employee" as any person engaged by one or more employers to perform work as part of the bargaining unit represented by the Union, cannot apply to Mr. Brennan since this definition and the NLRA expressly exclude him from its definition of an employee.

Under the NLRA an employee is defined as:

> The term "employee" shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any

11

> individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual employed by an employer subject to the Railway Labor Act [45 U.S.C.A. § 151 et seq.], as amended from time to time, or by any other person who is not an employer as herein defined. 29 U.S.C.A. § 152 (3).

Further, the National Labor Relations Board's (NLRB) has held that "[w]here an individual owns 50 [fifty] percent or more of a closely held corporation, as in the case of a copartner, that individual is, for the purposes of Section 2(3), the actual employer of the employees." *Cerni Motor Sales, Inc.,* 201 NLRB 918 (1973).

Here, the Funds concede that Mr. Brennan may not be considered an employee under the NLRA, but argue that since this claim is brought under the ERISA, a determination of Mr. Brennan's employee status under the NLRA is irrelevant. This court agrees. The instant action was brought by the Funds and not the union. The union is not a party to this case. Moreover, Brennan Electrical has failed to cite to any authority where the employee status under the NLRA precluded or preempted a contrary finding under the ERISA.

A case illustrative on this issue is the Sixth Circuit's decision in *Trustees of B.A.C. Local 32 Ins. Fund v. Fantin Enterprises, Inc*. 163 F.3d 965, 969 (6th Cir.1998). In *Fantin,* the Sixth Circuit addressed language in the agreement which stated that "contributions were due on behalf of all employees doing work within the bargaining unit covered by the collective bargaining agreement." *Fantin,* 163 F.3d at 970. The Sixth Circuit panel first held that "as a matter of law, collective bargaining agreements may require employers to contribute to funds for all employees, not just employees who are members of the union." *Id.* Further, the Court held that [e]mployees covered by the trust agreements are therefore defined by the nature of their work and not their union status. *Id.*

Here, it is undisputed that during the pertinent period of 2005-2007, Mr. Brennan performed

covered work. There appears to be a genuine dispute with respect to amount hours he performed the work but no dispute that he performed covered work. Therefore, Mr. Brennan was covered by the Participation Agreement.

*Brennan Electrical's Estoppel Argument*

Brennan Electrical argues that the Funds' claims should be barred by the doctrine of equitable estoppel for essentially two reasons. First, the Funds should be estopped from seeking contributions from Mr. Brennan, because this action is contrary to the plain language contained in the Participation Agreements and Residential Agreement. Second, Brennan Electrical argues that for nearly twenty years the Funds have never sought to collect or ever collected any contributions from Mr. Brennan and should be estopped from doing so now. The Funds counter, arguing that contractual defenses such as estoppel are not available to a defendant in an action by a trust fund to collect delinquent contributions. For the ensuing reasons, this court rejects Brennan Electrical's argument.

Contract defenses available in trust fund collection actions are limited. *Trustees of B.A.C. Local 32 Ins. Fund v. Caloia* 261, F.Supp.2d 814, 819 (E.D. Mich. 2003). Indeed, courts have held that there are three defenses available in a collection action which are:

> (1) the pension contributions are illegal; (2) the collective bargaining agreement is void ab initio, as where there is fraud in the execution; and (3) the employees have voted to decertify the union as [their] bargaining representative, thus prospectively voiding the union's collective bargaining agreement. *Caloia* 261, F.Supp.2d at 819.

In *Michigan Elec. Employees Pension Fund v. Encompass Elec. & Data, Inc*. 556 F.Supp.2d 746, 767 (W.D. Mich. 2008), the court held that a defendant "may not use the doctrines of waiver and estoppel, or any other state-law defenses to contract formation or enforcement that might otherwise apply, to avoid compliance with its audit, reporting, and benefit payment obligations under the CBA."

13

that were incorporated into the letters of assent. This court is persuaded by this reasoning and holds that the defense of equitable estoppel should not be available as a defense in this type of case. However, even assuming that the defense is available, Brennan Electrical cannot establish a basis to estop recovery.

In addition, in an ERISA case, the Sixth Circuit has held that equitable estoppel requires proof of five elements:

> (1) There must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment. *Marks v. Newcourt Credit Group, Inc.,* 342 F.3d 444, 456 (6th Cir.2003).

All of these elements must be present before the court may order estoppel. *Trustees of Michigan Laborers' Health Care Fund v. Gibbons* 209 F.3d 587 (6th Cir. 2000).

This court believes that no reasonable jury could return a verdict finding that each of the factors were satisfied here, and accordingly hold that the equitable estoppel argument must fails as a matter of law. There is no evidence that the Funds ever made any representation upon which Brennan Electrical could have reasonably relied. It is undisputed that Mr. Landa is not representative of the Funds. Thus, any representation that he allegedly made to Mr. Brennan could not be attributable to the Funds. However, even if Mr. Landa was representative of the Funds, his statement could not be used to defeat the clear language of the agreements. As stated above, the plain language of the pension agreements does not exclude Mr. Brennan as the primary owner of Brennan electrical, since the agreements clearly limit the exclusion to sole proprietorships and partnerships. See *Zirnhelt v.*

*Michigan Consol. Gas Co.* 526 F.3d 282, 288 (6th Cir. 2008)(the Sixth Circuit held that the principles of estoppel cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions); see also *Central States, Southeast and Southwest Areas Pension Fund v. Behnke, Inc.* 883 F.2d 454, 459 (6th Cir.1989)(the Sixth Circuit has held the LMRA and ERISA require employer contributions to trust funds on behalf of employees to be pursuant to detailed written agreements specifying the employer's duty to contribute).

Further, although Brennan Electrical asserts that the Funds waited twenty years to attempt collection of the unpaid contributions, the Funds are only trying to obtain contributions for the years 2005-2007. These years are all covered under the most recent Residential Agreement. Indeed, the Funds have acknowledged that they did not seek contributions from Brennan Electrical for the years of 1998-2003, where the Funds records reflected that the company was inactive. Therefore, there was nothing in the Funds' conduct which would have led Brennan Electrical to believe that no contributions were on behalf of Mr. Brennan. Accordingly, there was nothing in the contract language, which could be relied upon to believe that no contributions were owed with respect to Mr. Brennan. Consequently, since all five elements cannot be met the defense of equitable estoppel is not available to bar recovery.

*Sufficiency of Pleadings*

Brennan Electrical contends that the Funds failed to state a claim upon which they can recover any contributions because they did not allege anything owed pursuant to the Residential Agreement in their initial Complaint or in the Amended Complaint. In determining whether to grant a motion to dismiss, all well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 855 (6th Cir. 2003). A complaint

15

need not contain detailed factual allegations, but requires "more than labels and conclusions, and a formulaic recitation of the elements of a case of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. See *Schied v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 437 (6th Cir.1988). The court finds that the Funds have stated facts sufficient to comply with the notice pleading requirements of Rule 8(a)(2). Brennan Electrical appears to have been well aware of the Funds claims against it and has been able to adequately defend itself.

*Termination of the Residential Agreement*

Brennan Electrical argues that the letters Mr. Brennan sent to Local Union # 58, IBEW's and to the NECA on January 22, 2007, effectively ended his relationship with them and any obligations it had under the Participation Agreements. The Funds counter stating that Mr. Brennan's letters did not terminate the Participation Agreements, because the contract specifically says that notice of termination must be sent to the Funds' offices, which Mr. Brennan undisputedly failed to do. This court agrees with the Funds.

The provision of the Participation Agreement which deals with termination provides: "[t]he Employer may revoke its election and terminate this Pension Fund Participation Agreement at any time by giving written notice of such revocation to the Pension Fund at the Fund Office." In interpreting a CBA, courts must:

> (1) "look to the explicit language," (2) evaluate that language "in light of the context" that led to its use, (3) "interpret each provision ... as part of the integrated whole," (4) construe each provision "consistently with the entire document and the relative positions and purposes of the parties," (5) construe the terms "so as to render none nugatory" and to

16

"avoid illusory promises," (6) look to other words and phrases in the document to resolve ambiguities, and (7) "review the interpretation ... for consistency with federal labor policy." *UAW v. Yard-Man,* 716 F.3d 1476, 1479-80 (6th Cir.1983).

Here, the contract language requiring that notice of termination be submitted to the Funds' office is clear and unambiguous and there are no other provisions of the contract which cast doubt on its meaning. Moreover, even under the termination provision of the Residential Agreement, Brennan's letters would not have resulted in immediate termination. Therefore, this court must conclude that Brennan Electrical's letters dated January 22, 2007 did not terminate the Participation Agreements.

*Amount of Contributions Owed*

There appears to be a genuine issue of material fact as to the amount Brennan Electrical owes in unpaid contributions for the pertinent time period of 2005-2007. Brennan Electrical has questioned the validity of the audit that the Funds conducted and the amount owed for each employee. Accordingly, the court will allow this issue to proceed.

IV.
*Conclusion*

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (D/E 13) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (D/E 15) is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED**.

DATED: March 26, 2010                            **s/Anna Diggs Taylor**
                                                 ANNA DIGGS TAYLOR
                                                 UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on March 26, 2010.

                                           s/Johnetta M. Curry-Williams
                                           Case Manager